IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

       V.

                                   DNYN 8:18CR00069-001

TYLER HARGRAVE,

       Defendant.
_____

## SENTENCING MEMORANDUM

DATED:    November 5, 2018        LISA A. PEEBLES
                                                          Federal Public Defender

                                            By:
                                                             Randi J. Bianco
                                                             Assistant Federal Public Defender
                                                            Bar Roll No. 507514
                                                           Clinton Exchange, 3rd Floor
                                                           4 Clinton Street
                                                           Syracuse, New York   13202
                                                           (315) 701-0080

**I.      PRELIMINARY STATEMENT**

On August 8, 2018, absent a written plea agreement, Tyler Hargrave (hereinafter "Tyler") pled guilty to one count of transportation of child pornography (Count 1) in violation of 18 U.S.C. §§ 2252A(a)(1), (b)((1) and 8(A); receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)((1)(Count 2); and possession of child pornography (counts 3-4) in violation of  18 U.S.C. §§ 2252A(a)(5)(b) and (b)(1) and 2256(8)(A).

A Presentence Investigation Report [hereinafter "PSR"] was prepared by the United States Probation Department on October 10, 2018, in anticipation of Tyler's sentencing. According to the PSR, his total offense level is 37 (after acceptance) and his Criminal History Category is 1, resulting in a guideline imprisonment range of 210 to 262 months. Tyler's sentencing is scheduled for December 4, 2018.   Tyler has raised his objections to the factual contents contained in the PSR with probation, including the restitution request for the victim of $25,000 and attorney's fees totaling $33, 415 (Paragraph 22).

Additionally, the defense submits that based on the arguments below, many of the sentencing enhancements set forth in U.S.S.G §2G2.2 should be rejected and that based on the 18 USC §3553 factors present, a non-guideline sentence is appropriate.  Tyler further objects to the cumulative counting for distribution of the images in paragraphs 29 and 31 of the PSR. In paragraph 29, Tyler was given a five-point enhancement for engaging in the distribution of child pornography (not for pecuniary gain) under U.S.S.G. § 2G2.2(b)(3)(B).  In paragraph 31, he was given a two-point enhancement for distribution of the images that involved the use of a computer under U.S.S.G. § 2G2.2(b)(7)(D). Both enhancements involve the same act of distribution. Although the guidelines allow for the cumulative counting, it seems fundamentally unfair to punish Tyler twice for the same conduct.  Such a calculation overinflates his guidelines.

The Supreme Court decision in *United States v. Booker*, 543 U.S. 220 (2005), held the sentencing guideline range to be only advisory. *See* 18 U.S.C. § 3553(a)(4). In determining a sentence, a Court must not only consider Guideline calculations, but also equally take into account all other statutory concerns regarding the purpose of punishment listed in 18 U.S.C. § 3553(a)(2), as well as the unique circumstances of the Defendant. *See* § 3553(a) (Supp. 2004).

The Sentencing Reform Act provides, in part, that:

> The Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in this subsection. The Court, in determining the particular sentence to be imposed, shall consider-
>
> (1)  the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
> (2)  the need for the sentence imposed-
>   (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   (B)  to afford adequate deterrence to criminal conduct;
>   (C)  to protect the public from further crimes of the defendant; and
>   (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. §3553(a).

In light of *Booker* and the return of discretion to the sentencing courts, the defense respectfully requests this Court depart downward and give Tyler a non-guideline sentence of 60 months plus post-release supervision.

## II.   TYLER'S BACKGROUND AND PERSONAL HISTORY

A careful consideration of Tyler's young age, personal history, and the totality of relevant circumstances surrounding the offense should lead this Court to conclude that a downward departure from the sentencing guidelines is appropriate. A downward departure to 60 months plus post-release supervision would result in a sentence sufficient, but not greater than necessary, to accomplish the purposes of punishment. Tyler was 17 years old when the offense began and

only 19 years old at the time of his arrest. Most importantly, there are no allegations that Tyler inappropriately touched a child or tried to communicate with a child via the internet or elsewhere. This is significant. Whether a child pornographer has had or has attempted to have contact is an important distinction, as there may be significant, relevant differences between these two groups. *United States v. Brown,* 843 F.3d 73, 83 (2d. Cir 2016).

### a. The circumstances leading up to the offense

Tyler had a tumultuous relationship with his adoptive father, who was addicted to pornography himself. While still a minor, Tyler stumbled onto to a website with child pornography and then began viewing it. Significantly, he was only 19 years old when he was arrested on state charges for the same conduct that he is charged with here.

Courts look at the circumstances leading up to the offense when considering the appropriate sentence that should be imposed. *See U.S. v. Smith* (4th Cir. April 22, 2008) 2008 WL 1816564 (unpub.) (in child porn case where guidelines were 78-97 months, sentence of 24 months was not an abuse of discretion where district court noted defendant was 64 years old and had no criminal history, defendant was not accused of having violated or molested any minor, did not suffer from mental illness, there was no risk of recidivism, and he "lived an exemplary life to this point, full of noteworthy activities"); *U.S. v. Huckins,* 529 F.3d 1312 (10th Cir. 2008) (where defendant was convicted of possession of child porn and guidelines were 78-97 months, Court's variance to 24 months was proper in part because this was defendant's first conviction, he obtained licenses for employment and maintained steady employment prior to being charged, and did not occupy a position of trust with children); *U.S. v. Gray,* 453 F.3d 1323 (11th Cir. 2006) (in distribution of porn case where low end of guidelines was 151 months, district court's sentence of 72 months was reasonable because the Court took into consideration the Section 3335(a) factors which

include the "history and characteristics of the defendant—here "the defendant's age, prior minimal record, and his medical condition" Defendant was 64, had never molested a child, suffered from depression and tried to commit suicide several times).

Here, the Court will see there are a number of factors that weigh in favor of a downward departure for Tyler, such as his age, the mental abuse he endured from his adoptive father, the lack of guidance he had as a youth, his low risk of recidivism, the collateral consequences he will endure, and his remorse and acceptance of responsibility. Based on these factors further discussed below, the defense requests that this Court determine that a below-guideline sentence is proper in this case.

**b. Tyler's Family**

Tyler's mother (hereinafter "Amanda") gave birth to him when she was 16 years old. His mother and biological father were not together at the time of Tyler's birth and he never knew his biological father. Tyler's mother got together with Lloyd Hargrave (Lloyd) soon after Tyler's birth and the couple had a child together. This was Tyler's half-sister Desiree, who was born in August 2000. Thereafter, Lloyd Hargrave married Amanda on November 22, 2002, when Tyler was 3 years old. Lloyd adopted Tyler in 2006. Although Lloyd adopted Tyler, he was treated much worse than his half-sister Desiree. Lloyd was verbally abusive to Tyler throughout the years and was constantly making demeaning and derogatory remarks to him. During the course of his childhood, Tyler also witnessed constant arguments between Lloyd and his mother with his mother frequently ending up in tears. Tyler tried to intercede, but this only made things worse.

Lloyd and Amanda Hargrave's relationship ended when Amanda called Homeland Security on Lloyd when she found what she believed was child pornography on his computer. She found

4

searches such as "father fucks daughter," "Dad powerfucks friend's daughter," "daughter fucked in front of dad," "daughter wants daddy's dick " and similar searches. Homeland Security conducted an investigation, but did not find any child pornography, only adult pornography and some disturbing search terms. Lloyd was never charged, but the marriage was over and the couple divorced in 2012. Amanda laid out the problems in the marriage in both her petition for divorce and petition for custody citing Lloyd's "serious addiction to pornographic internet sites" referencing the sites contained above. She also referenced a disturbing incident with Lloyd's inappropriate communications with a 12-year-old neighbor in which the police were called.

Courts have considered a defendant's lack of guidance as a youth and disadvantaged background in determining that a below-Guideline sentence is appropriate. *See U.S. v. Floyd*, 945 F.2d 1096 (9th Cir. 1991) (in drug case, Court affirms departure from guideline range of 30 years to life to 17 years because of defendant's abandonment by his parents and lack of guidance as a youth – rendering defendant less culpable); *see also Landrigan v. Schriro*, 441 F.3d 638, 648 (9th Cir. 2006) ("Where a defendant's crime is attributable to a disadvantaged background or emotional or mental problems, the defendant is less culpable than one without the excuse."). Furthermore, courts can consider a defendant's troubled upbringing and his exposure to physical or emotional abuse as a child. *U.S. v. Lopez*, 938 F.2d 1293, 1298 (D.C. Cir. 1991). As the Supreme Court has recognized, "Children who are abused in their youth generally face extraordinary problems developing into responsible, productive citizens." *Santosky v. Kramer*, 455 U.S. 745, 789 (1982); *see U.S. v. Deigert*, 916 F.2d 916, 918-19 (4th Cir. 1990).

Here, Tyler was abandoned by his biological father before his mother even gave birth to him. Although Tyler's stepfather adopted him when he was three years old, his adoptive father verbally and emotionally abused both Tyler and his mother throughout Tyler's life. Because

Tyler did not have his biological father in his life, and the father figure Tyler did have was abusive and addicted to pornography, it is clear Tyler lacked any kind of positive guidance throughout his youth. While the crime Tyler has been convicted of is reprehensible, it is clear where he learned this behavior. Despite the nature of the charges, Tyler is a person with many positive attributes and saving qualities. Indeed, one needs to merely look at the numerous support letters we have submitted to get a glimpse of the type of person Tyler is. As exemplified in each of these letters, Tyler is consistently described as "courteous and respectful," and "always being willing to help."[1] Tyler is known by his family and community for his kind heart, his willingness to help others who are unable to do things for themselves, his incredible work ethic both inside and outside of school, and his politeness and respect towards others. It is clear when reading each of the attached support letters that those who know Tyler see him as gracious, motivated, and compassionate towards everyone he meets.

### c.  Educational and Employment History

Tyler graduated with honors from Massena High School in 2017. He was in the National Honor Society as well as the Spanish Honor Society. He was also president of the high school's chess club for two years and participated in "Whiz Kids" which is a school academic competition. During the school year, Tyler was employed part-time at McDonald's and then Taco Bell. After graduation, Tyler worked as a math tutor, helping SUNY Potsdam students.

Because of his academic performance in high school, Tyler received a full academic scholarship to Wells College. He moved to the Wells campus for the fall 2017 semester. This was a dream come true for Tyler as he was attending a prestigious college and his scholarship allowed him to concentrate on his studies without having to worry about how he was going to

---

[1] Support letters attached under separate cover

pay for his education.  Tyler was only able to complete one semester of college before he was arrested in state court for these same offenses.

Courts have found that a defendant's educational and employment history are relevant in determining whether a downward departure is warranted.  *See U.S v. Baker*, 445 F.3d 987, 992 (7th Cir. 2006) (in distribution of porn case where guideline called for 110 months, 78 month sentence affirmed: defendant's "lack of a criminal history, his relatively young age, his religious background and his history of both employment and higher education...coincides with the sentencing factors specified in § 3553(a) so below guideline sentence affirmed).  Additionally, as set out in the Sentencing Guidelines, one of the factors courts must consider in sentencing is "the need of the sentence imposed…to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  18 U.S.C. § 3553(a)(2)(D).

Similar to the defendant in *Baker*, Tyler has a lack of a criminal history, is of relatively young age, and has a history of both higher education and employment.  Tyler was pursuing a college degree at the time he was arrested for this matter, and was consequently unable to complete his degree.  Tyler has been tremendously involved in school since he was a child, and has strived to succeed academically.  To impose a sentence that is longer than necessary would deprive Tyler of continuing to pursue his degree and may even discourage him from enrolling in college upon completion of his sentence.  Thus, a below-guideline sentence would be sufficient, but not greater than necessary, to meet both society's and Tyler's goals.

**d. Tyler's Age**

As discussed briefly above, Tyler was only 17 years old at the time this conduct began.  He was viewing child pornography when he was still a minor himself.  Even by the time Tyler was

arrested, he was only a 19-year-old college freshman, barely halfway through his first year. The Court should consider Tyler's immaturity and age at the time he was engaging in this activity.

The Sentencing Guidelines have been liberalized to state that age "may be relevant" as to whether downward departure should be granted. USSG §5H1.1; *Gall v. U.S.*, 552 U.S. 38 (2007); *see U.S. v Polito*, (5th Cir. Jan. 31, 2007 No. 06-30133) 2007 WL 313463 (unpub.) (where defendant convicted of possession of child pornography and guidelines were 27-33 months, district court's sentence of probation with one year house arrest was reasonable in part because defendant was 18 at time of the offense "and very immature...and his age and mental condition prohibited him from acting rationally"); *see also U.S. v. Stern,* 590 F.Supp.2d 945, 952 (N.D.Ohio, 2008) (in child pornography case, a sentence of twelve months and one day, which was below the advisory range of 46-57 months, was sufficient but not greater than necessary because although offense was exceedingly serious, defendant was 14 years old and immature when he began his activities); *United States v. McElheney,* 524 F.Supp.2d 983, 997 (E.D.Tenn.2007) ("Typically, defendants in [child pornography] cases are first offenders, highly educated, *middle aged,* with solid work histories.") (emphasis added); *see also Gall v. United States,* 552 U.S. 38, ----, 128 S.Ct. 586, 601 (2007) ("[Y]outh is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage.").

Here, Tyler began viewing child pornography when he was a minor at 17 years old. Just like the defendants in the cases mentioned above, Tyler was immature at the time of the offense and was susceptible to influence. Additionally, Tyler is a first-time offender, has an impressive educational background, and is substantially younger than most other defendants who are

8

convicted of child pornography offenses. Therefore, age should be considered by this Court in determining Tyler's sentence.

### e. Tyler's Remorse and Minuscule Risk of Recidivism

The Court must consider the need to protect the public from further crimes by Tyler under 18 U.S.C. § 3553(a)(2)(C). The U.S. Sentencing Commission has expressed that "the likelihood of recidivism and future criminal behavior must be considered" to protect the public. U.S. SENTENCING GUIDELINES MANUAL, Chapter Four, Introductory Commentary. The Commission has found that offenders without prior arrests have the lowest recidivism rate of all other offenders. *See* U.S. Sentencing Commission, *Recidivism and the "First Offender"* 13-14 (May 2004) [hereinafter "Recidivism Report"].[2] Courts have similarly reasoned that incarceration would have a greater significance for a defendant with no incarceration history. *See United States v. Baker*, 445 F.3d 987 (7th Cir. 2006). In *Baker*, the Seventh Circuit affirmed a below-guideline sentence for a possessor of child pornography where the lower court took into account the defendant's "lack of criminal history, [and] his relative young age."[3] *Baker* at 992.

Tyler's criminal history consists only of a trespass conviction (a violation). (PSR ¶ 44). As per the Sentencing Commission, these facts give him the lowest rate of potential recidivism. *See Recidivism Report*, at 14.

### f. Collateral Consequences of Arrest and Conviction

---

[2] Recidivism rate for defendants with no prior arrests is 6.8%. *See Recidivism and the "First Offender,"* 14 *available at* <http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_First_Offender.pdf>. However, the re-conviction recidivism rate for these offenders is 2.5%. *Id*. Re-conviction recidivism rates "limit[] recidivism to the first reconviction during the two year follow-up period." *Id*. at 13.

[3] Additionally, the Court noted as significant, "the District Court's finding that a prison term would mean more to [the defendant] than to a defendant who had been previously been imprisoned." *Baker*, at 992.

Because of his arrest, Tyler was required to leave Wells College and lose his full academic Scholarship. Tuition for Wells College for the 2017/2018 academic year was $39,200. Tuition was recently reduced to $29,400 for the 2019/2020 academic year.[4] Therefore, Tyler would have lost the equivalent of more than $120,000 in scholarship benefits.

Courts have recently considered the collateral consequences endured by the defendant when determining the appropriateness of a downward departure. *See U.S. v. Pauley*, 511 F.3d 468 (4th Cir. 2007) (where client pled to possession of child porn, and guidelines were 78-97 months, downward variance to 42 months affirmed in part because defendant lost his teaching certificate and state pension as a result of his conduct"); *U.S. v. Garate*, 543 F.3d 1026, 1028 (8th Cir. 2008) (noting it was appropriate for the district court to consider, under § 3553(a), the "lasting effects of being required to register as a sex offender"); *U.S. v. Baird*, 2008 WL 151258, (D.Neb. Jan. 11, 2008) (unpub.) (in child porn case where guidelines were 41-57 months, sentence of 24 months was imposed in part because "the defendant has already suffered serious consequences as a result of his actions. A conviction for possession of child pornography carries considerable stigma." Baird has lost his military career, has a felony conviction on his record, and will have to register as a sex offender:); *U.S. v. Wachowiak*, 412 F.Supp.2d 958 (E.D. Wisc. 2006) *aff'd* 496 F.3d 744 (7th Cir. 2007) (where 24-year-old music student convicted of possessing child pornography, court imposes 70 months, where guideline range was 121-150 months, in part because "the guidelines failed to account for the significant collateral consequences defendant suffered as a result of his conviction. His future career as a teacher was ruined, and he was compelled to resign as piano teacher of children and as a church musician. He will also be forced to live with the stigma of being a convicted sex offender.")

---

[4] https://fingerlakes1.com/2018/09/07/wells-college-drops-tuition-costs-for-2019-20-school-year-by-10000/

Here, Tyler was awarded a full scholarship to Wells College. Upon being arrested for the underlying offenses, he lost that full scholarship, and in total lost more than $120,000 in scholarship award money. Furthermore, Tyler must now register as a sex offender at the age of 20, for offenses that occurred from when he was 17 to 19 years old. Because he is young, the stigma associated with being a sex offender will follow him the rest of his life, may inhibit him from receiving employment opportunities, and may prevent Tyler from receiving acceptances and financial aid from other colleges. In consideration of these collateral consequences, the Court should find that a downward departure from the sentencing guidelines is appropriate.

### III. A BELOW GUIDELINES SENTENCE IN THIS CASE WILL FULFILL THE NEED FOR DETERRENCE

The court is obligated to impose a sentence that "afford[s] adequate deterrence to criminal conduct." § 3553(a)(2)(B). This purpose of sentencing requires a sentence that will both (1) deter others who might be inclined to receive or possess child pornography from doing so and (2) specifically deter the defendant from engaging in similar conduct in the future. A guideline sentence of 210 months to 262 months of incarceration for Tyler is a significantly harsher sentence than is needed to fulfill both of these goals.

The incarceration period of five years, coupled with the collateral consequences that attach to an offense such as post-release supervision is *far more than* adequate to deter both Tyler and others from engaging in similar conduct. Because of his conduct, Tyler will have to comply with strict requirements set by the court, along with becoming a registered sex offender in any community he lives in. He will not be able to change or make decisions about significant circumstances in his life, such as where to live or work, which are prized liberty interests, without first seeking authorization from either his probation officer or, perhaps, even the Court. Tyler will always be labeled a sex offender and will bear that scarlet letter for a majority of his

life.  These collateral consequences of conviction—regardless of whether any prison sentence is imposed at all—are sufficient to deter a young person like Tyler from looking at child pornography. *See United States v. Mateo*, 299 F.Supp.2d 201, 210 (S.D.N.Y.2004) ("[B]eyond the offender's actual deprivation of liberty when incarcerated, a host of other penalties and burdens always attend criminal conviction, to name a few: losses of family life, of socioeconomic status, of employment and career opportunities; diminution of certain civil rights and entitlements; and countless humiliations and indignities commonly associated with living in confinement").

## IV.     THE SENTENCING GUIDELINE ENHANCEMENTS SET FORTH IN U.S.S.G. § 2G2.2 RESULT IN A GUIDELINE RANGE THAT IS INCOMPATIBLE WITH § 3553(A) FACTORS

The defense submits that in the present case the Sentencing Guidelines should be rejected on policy grounds. A sentencing judge "may vary from Guideline ranges based solely on policy considerations, including disagreements with the Guidelines."  *Kimbrough* v. *United States,* 552 U.S. 85 at 101 (2007).  Such a policy disagreement is appropriate in this case because several of the enhancements that the PSR applies to Tyler's case have been widely criticized on policy grounds.

The child pornography Guideline -- Section 2G2.2 -- has been described as "an eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results." *United States v. Dorvee*, 616 F.3d 174, 188 (2d Cir. 2010).  The Second Circuit has criticized the 2G2.2 Guidelines and held that applying enhancements that are inherent to the crime and, consequently, apply to the vast majority of defendants, such as § 2G2.2 enhancements, "eviscerates the fundamental statutory requirement in § 3553(a)." *Id;* see also *United States v. Jenkins*, 854 F3d. 181, 190 (2d Cir. 2017)(Sentence of 225 months in prison that

12

was 165 months above statutory minimum and 15 months below statutory maximum, imposed upon defendant convicted of possession and transportation of child pornography, was shockingly high, favoring remand for resentencing; application of Sentencing Guideline governing child pornography offenses that allowed for cumulation of repetitive, all-but-inherent enhancements placed defendant, who possessed and transported child pornography only for his own personal use, at top of range with very worst offenders, where he did not belong).

In *Dorvee*, a defendant pled guilty to distribution of child pornography and was sentenced to a term of 240 months in prison, the statutory maximum. *Id.* at 178. In vacating the sentence, the Second Circuit found and identified "certain serious flaws" in § 2G2.2 and encouraged district judges to recognize their broad discretion to impose below-Guidelines sentences rather than mechanically applying 2G2.2. According to the PSR, multiple enhancements were applied to Tyler's offense that adjusted his total offense level upwards, as follows:

- 2 levels because the offenses involved prepubescent minors pursuant to U.S.S.G. § 2G2.2(b)(2), see [PSR ¶ 28];

- 5 levels because he engaged in distribution for valuable consideration, but not for pecuniary gain pursuant to U.S.S.G. § 2G2.2(b)(3)(B) see [PSR ¶ 29];

- 4 levels because the offenses involved material that portrays sadistic or masochistic conduct, pursuant to U.S.S.G. § 2G2.2(b)(4)(A), see [PSR ¶ 30];

- 2 levels because the offenses involved the use of a computer for the possession, transmission, receipt or distribution of the images and videos of child pornography, pursuant to U.S.S.G. § 2G2.2(b)(6), see [PSR ¶ 31];

- 5 levels because the offense involved 600 or more images of child pornography pursuant to U.S.S.G. § 2G2.2(b)(7)(D), see [PSR ¶ 32].

These enhancements were addressed in *Dorvee,* recognizing that they apply in virtually every case. *Dorvee*, 604 F.3d at 96. They raise Tyler's offense level to 37[5] and increase his guidelines from 30-37 months up to 210-262 months, resulting in an overly severe sentence. As examined below, these enhancements apply in virtually every case and fail to distinguish Tyler's actual culpability.

These child pornography-sentencing enhancements set forth in U.S.S.G. § 2G2.2 are now being rejected by many federal courts. *See United States v. R.V.*, 157 F. Supp. 3d 207, (E.D.N.Y. Jan. 21, 2016) (collecting cases). This is because the sentencing enhancements used to determine the advisory guideline range under 2G2.2 are not the product of any careful study or empirical data. Instead, the child pornography Guidelines were "amended at the direction of Congress rather than through the Sentencing Commission's empirical approach." Id at 252. Indeed, the Commission "opposed some changes to the Guidelines directed by Congress and has sought authority from Congress to amend the current child pornography provisions." *Id*.

When Guidelines are guided by statutory directives, rather than empirical analysis, such as §2G2.2 enhancements, a Court is not presented with the ordinary case in which the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve 3553(a)s objectives. *See, e.g.*, *Kimbrough*, 552 U.S. at 109 (quoting *Rita v. United States,* 551 U.S. at 350); *see also Gall v. United States*, 552 U.S. at 46 n. 2 (noting that not all Guidelines are tied to empirical evidence). In these cases, it is not an abuse of discretion for a district court to conclude that application of the Guideline yields a sentence greater than necessary to achieve section 3553(a)'s purposes. *Kimbrough,* 552 U.S. at 109. Here, the court should make that conclusion and impose a below-Guidelines sentence.

---

[5] The total offense level without the above enhancements is 19 (after acceptance), which results from a base offense level of 22.

14

## V.  CONCLUSION

The Supreme Court, through its decision in *Booker* has returned discretion to the sentencing courts and thus affirmed that sentencing is an individualized process which takes into account all relevant circumstances to determine a sentence that is not greater than what is necessary to accomplish the goals of 18 U.S.C. § 3553(a)(2).  Tyler's actions were driven by unfortunate circumstances in his personal life. He has admitted his actions, accepts them as wrong, and is prepared to receive his punishment.  Tyler is extremely remorseful, and has the full support of his family.  Furthermore, a below-guideline sentence of 60 months is fully consistent with a significant number of child pornography cases that have been recently decided by this very Court.[6]  Based upon the foregoing, the defense respectfully requests this Court consider the mitigating factors in this case and find a below-guideline sentence sufficient and appropriate. We further request that this Court recommend a designation of FCI Danbury as Tyler has relatives very close to that facility who would be able to visit him regularly.

DATED:    November 5, 2018            LISA A. PEEBLES
                                       Federal Public Defender

                              By:   *S/Randi J. Bianco, Esq.*
                                    Assistant Federal Public Defender
                                    Bar Roll No. 507514
                                    Clinton Exchange, 3rd Floor
                                    4 Clinton Street
                                    Syracuse, New York   13202
                                    (315) 701-0080

cc:   Geoffrey Brown, AUSA
      Sahar L. Amandolare, AUSA
      USPO Angela Bennett Rodriguez
      Tyler Hargrave

---

[6] *See U.S. v. Isaacson*, 16-CR-047 (GLS); *U.S. v. Colon*, 16-CR-183 (GLS); *U.S. v. Lillie*, 16-CR-245 (GLS); *U.S. v. Gentile*, 16-CR-222 (GLS)*; U.S. v. Rothfeder*, 15-CR-335 (GLS); *U.S. v. Shaw*, 16-CR-00160 (GLS); *U.S. v. Tefft*, 13-CR-00340; *U.S. v. Kemprowski*, 13-CR-00291 (GLS).